**B & L CHERRY HILL
ASSOCIATES, LTD.**

v.

**FEDDERS CORPORATION, United Distributing of Texas, Inc. and City Wide Air Conditioning Company, Inc.**

**No. 05–84–01241–CV.**

Court of Appeals of Texas,
Dallas.

Aug. 9, 1985.
Rehearing Denied Sept. 12, 1985.

Arch M. Skelton, Ray G. Besing & Assoc. P.C., Dallas, for appellant.

Paul S. Adams, Jr., Johnson, Bromberg & Leeds, Steven A. Harr, Winstead, McGuire, Sechrest & Minick, Dallas, for appellee.

Before CARVER, GUILLOT, and DEVANY, JJ.

DEVANY, Justice.

In this appeal by the owner of an apartment and office complex against an air-conditioning sub-contractor, the trial court rendered summary judgment denying recovery on the ground that the suit was barred by a settlement agreement in a previous suit by the owner against the general contractor. We hold that the suit is not barred, and thus we reverse the summary judgment and remand the cause for trial.

B & L Cherry Hill Associates, Ltd., (Cherry), the owner, appellant, entered into a construction contract with Keller-Tynes in 1979 for the construction of a 184-unit apartment and office complex called Cherry Hill Apartments in Dallas, Texas. Upon completion, Cherry found a number of defects in the construction work and filed suit against Keller-Tynes enumerating a number of complaints, including: "improper installation of air conditioning equipment." On May 28, 1982, the parties to that suit announced to the court that all matters in dispute had been compromised and the court ordered the cause dismissed with prejudice. Previous to the entry of that dismissal, the parties entered into a settlement agreement which provided that all matters set forth in the law suit and other claims were compromised and settled. That settlement agreement enumerates the manner of settlement with reference to each item, specifically providing for (a) reimbursement for repair work done by Cherry, (b) setting up of a fund to make specific repairs for subflooring defects, (c) repair of drainage defects, (d) payment of specific amounts to Cherry for funds held by Keller-Tynes, and (e) that Keller-Tynes would provide Cherry with a list of construction vendors involved in the construction of the complex, including "warranties for any materials or equipment used in the construction of the [p]remises."

On September 27, 1982, Cherry filed suit against Fedders Corporation, United Distributing of Texas, Inc., and City Wide Air Conditioning Co., Inc. (all referred to as Fedders), appellees, alleging the construction contract with Keller-Tynes and the sub-contract for the air conditioning installation to Fedders. Cherry then alleged that both it and its predecessor, Keller-Tynes, encountered and experienced excessive failures of the compressors manufactured by Fedders and an overall inability of the air conditioning units to cool the apartments and offices in the complex. Cherry charged breach of implied warranties and violations of the Deceptive Trade Practices Act. Specific allegations include failure of

compressors and condenser motors, numerous instances of internal leaks in condensers, defects in refrigerant lines and insufficiency of the condensers. These allegations appear to restate what amounts to an "improper installation of air conditioning equipment," as alleged in the suit against Keller-Tynes; hence the remedies sought in this suit are not repugnant to or inconsistent with the allegations in the prior suit.

Fedders filed a motion for summary judgment claiming a bar to the suit because of the compromise and settlement of the prior suit against Keller-Tynes. The court granted Fedders' motion for summary judgment. Cherry raises three points of error on appeal, which we sustain. Point of error number two, asserting error by the trial court in holding the suit is barred by the statute of limitations, actually has its predicate in Fedders' alternate motion for partial summary judgment which was not granted. This alternate motion, which had to do with the statute of limitations under the Texas Deceptive Trade Practices Act was not addressed by the trial court. Obviously, a trial would be necessary to determine when the statute of limitations began to run under the provisions of DTPA. We reverse and remand for trial on the merits.

Cherry's first point of error contends that the doctrines of res judicata, collateral estoppel, election of remedies, and compromise and settlement, the bases of the summary judgment, do not apply to its action against Fedders. Since the dismissal of the law suit against Keller-Tynes does not recite the terms of the agreement between the parties, we must look to the terms of the agreement itself to determine the issues decided. *Texas and New Orleans Railroad Company v. Barnhouse*, 293 S.W.2d 261, 266 (Tex.Civ.App.—1956, ref'd n.r.e.). In the present case, the record includes the settlement agreement in the first suit which has been summarized above. That instrument indicates that Cherry received nothing in the way of damages for the alleged defects in the installation of the air conditioning although there were other benefits received by Cherry and it was given copies of the warranties issued by the sub-contractor. It appears that Cherry stepped into the shoes of Keller-Tynes to seek redress for any defects in such work, but there was no resolution in the first suit of any fact issue concerning any defects in the installation of the air-conditioning equipment. This appeal raises the question of whether a suit by an owner against a general contractor for breach of contract, followed by a settlement and dismissal of the suit, bars that owner's claim against a sub-contractor employed by the general contractor for breach of implied warranties and deceptive trade practices. Is there any damage left to recover from the sub-contractor? To find the answer to this que we must examine the underlying principles that may be raised to bar a subsequent law suit.

■ Res judicata is the principle that an existing final judgment rendered upon the merits is conclusive of rights, questions and facts in issue *as to the parties*. Since Fedders was not a party in the first suit, it cannot claim res judicata. Collateral estoppel is the doctrine of estoppel by judgment where *issues* have been adjudicated. Ballentine's Law Dictionary 215, 1105 (3rd ed. 1969). No determination was made in the first suit as to any defects in the air conditioning. Consequently, the judgment is not supported by either of these doctrines.

■ We come then to the doctrine of election of remedies, which is the choosing between two or more different co-existing modes of procedure and relief allowed by law on the same state of facts. This is not a substantive rule of law, but a rule of procedure which provides that the adoption of one of two or more inconsistent remedial rights has the effect of precluding a resort to the others. Ballentine's Law Dictionary 394 (3rd ed. 1969). Cherry filed its first suit against its contractor containing a complaint about air conditioning. There is a question of whether Cherry possessed the necessary privity of contract to have the legal right to recover from Fedders and whether Cherry derived such right from Keller-Tynes by reason of the settlement

agreement or from an agency relationship which may have existed. In *Bocanegra v. Aetna Life Insurance Company*, 605 S.W.2d 848 (Tex.1980), Bocanegra had settled an occupational claim and then filed suit for the same injury as a non-occupational injury. The supreme court held that election should not bar a suit when a previous course of action or a settlement for less than the amount claimed was grounded upon uncertain and undetermined facts. 605 S.W.2d at 852. The court in *Bocanegra* noted that the doctrine of election of remedies finds its basis in unjust enrichment. 605 S.W.2d at 851. In the instant case, Cherry would not be unjustly enriched by recovery in this suit. Had Cherry recovered any sum for damages from Keller-Tynes arising out of the transaction involving the installation of the air conditioning, the principle of unjust enrichment might apply and the election to recover against Keller-Tynes might represent a bar to the present action against Fedders.

■ The rule of election of remedies finds further support in the protection of innocent parties. 605 S.W.2d at 852. Fedders is not an innocent party who has been jeopardized in any manner by settlement of the first suit. Fedders is the manufacturer and installer and no determination has been made of any claim against it for breach of warranties or deceptive trade practices. Fedders would be unjustly enriched if it has been guilty of a breach of warranties or deceptive trade practices and such determination were barred, the very thing that the principle of election of remedies seeks to prevent. In *Lomas and Nettleton Company v. Huckabee*, 558 S.W.2d 863, 864 (Tex.1977), the supreme court adopted the rule that:

> If one having a right to pursue one of several inconsistent remedies makes his election, institutes suit, and *prosecutes it to final judgment, or receives anything of value under the claim thus asserted, or if the other party has been affected adversely,* such election constitutes an estoppel thereafter to pursue another

and inconsistent remedy. (Emphasis added.)

Cherry did not prosecute its suit against Keller-Tynes to final judgment with a determination of any defects in the installation of the air conditioning; nor did it receive anything of value under the claim it asserted; nor was Fedders adversely affected by these actions. Furthermore, as stated above, the remedies sought are not repugnant or inconsistent.

Finally, we refer to *Bocanegra*, 605 S.W.2d at 851, which discussed inconsistency of remedies and stated that even though there may be an inconsistent position which may not fit the mold of a better defined principle, an election will bar recovery when the inconsistency in the assertion of a remedy, right or state of facts "is so unconscionable, dishonest, contrary to fair dealing, or so stultifies the legal process or trifles with justice or the courts as to be manifestly unjust." We do not find that Cherry's actions offend us under the guidance of this statement. We further note at 605 S.W.2d at 851 that the election doctrine *"may* constitute a bar to relief" (emphasis added) when four elements are present: "(1) one successfully exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice." This tells us that there is an evaluation to be applied. This evaluation is implied in the fourth element which refers to a "manifest injustice." Our facts do not show a manifest injustice in allowing Cherry to try its allegations against Fedders. On the contrary, we perceive a manifest injustice if it is not allowed to prosecute its claims. *Bocanegra* further holds that an "election should not bar a suit when a previous ... settlement for less than the claim was grounded upon uncertain and undetermined facts." 605 S.W.2d at 852. In the settlement of the previous suit, Cherry asked for a list of the sub-contractors and copies of warranties, facts it needed to determine if it had a claim against Fedders.

The last element of a bar to the suit, asserted by Cherry, is the principle of compromise and settlement, a doctrine whereby a compromise agreement is followed by the performance of the promises contained in the agreement. Ballentine's Law Dictionary 236 (3rd ed. 1969). The settlement agreement and dismissal of the first law suit did not provide a basis for any recovery of defects in the air conditioning except possibly to allow Cherry to proceed against Fedders. Since Fedders was neither a party to the settlement nor a third-party beneficiary, it cannot assert the settlement as a bar of the present suit.

Therefore, we sustain Cherry's first point of error.

The third point of error merely contends that there are unresolved issues to be tried. We agree for the reasons stated above and, therefore, sustain the third point of error.

We reverse and remand for trial on all issues.